**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PAUL CABRERA and STEPHANIE CABRERA,

    Plaintiffs,

v.                                            CASE NO: 8:05-cv-2209-T-26TGW

BOTO COMPANY, LIMITED,

    Defendant.
_____/

**O R D E R**

Before the Court is Plaintiffs' Motion to Interview Jurors and Motion for New Trial (Dkt. 133), and Defendant's Memorandum in Opposition. (Dkt. 136). After careful consideration of the arguments, the submissions of the parties, and the applicable law, the Court concludes that the motions should be denied.

The Plaintiffs raise five grounds seeking a new trial: (1) juror untruthfulness in the voir dire process; (2) improper and prejudicial cross-examination of Plaintiff Stephanie Cabrera; (3) improper closing argument by commenting on the lack of evidence of other fires involving the same type of Christmas tree; (4) failure to give a special jury instruction on the Cassisi[1] inference;[2] and (5) improper expert opinion regarding the

---

[1] Cassisi v. Maytag Co., 396 So.2d 1140 (Fla.Dist.Ct.App. 1981).

retardant nature of the tree branches. The Court will address each ground and the reasons why the Plaintiffs have not succeeded in meeting their heavy burden of demonstrating the need for a new trial.

## Jurors' Misconduct

This products liability case seeks damages allegedly caused by the defective product marketed as the "Perfect Tree," a fiber-optic Christmas tree. The Plaintiffs brought this action, claiming that their house fire had been caused by the defective tree when it was plugged into an electrical outlet in their living room. Prior to trial, at which the jury found no liability on the part of Defendant, the Plaintiffs did not submit proposed voir dire questions to the Court.³

The Plaintiffs claim that four of the eight jurors who decided the case did not answer truthfully some of the questions propounded by the Court. The Court asked the following questions of the venire as a whole:

---

² McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253 (11th Cir. 2002) (applying in a manufacturing defect case the "Cassisi inference" to spontaneous eruption and fragmentation of 30 cc Bard catheter because two prongs of "Cassisi inference" were proven: (1) catheter's malfunction was established through fragments of catheter found in bladder and prostate; and (2) catheter erupted during "normal operation").

³ See Case Management and Scheduling Order at docket 47, paragraph 7(b)(3), which invites counsel to submit selective questions, if desired.

> Have any of you ever appeared in Court as a witness or as a party, and by "party," I mean you sued someone or someone sued you? Anybody ever have that experience?[4]

Juror Dennison affirmatively answered the question, discussing an eviction proceeding against a tenant.[5] The Plaintiffs submitted certified copies of court records showing that a Mr. Dennison had filed another lawsuit in Pinellas County, Florida,[6] that a Mr. Dennison had previously filed a Chapter 13 bankruptcy case in 1991 in New Jersey,[7] and that a Mr. Dennison had also previously filed a Chapter 7 bankruptcy case in Florida in 1993.[8] The Plaintiffs argue that Mr. Dennison's failure to mention his filing another lawsuit and two bankruptcy cases amounts to an intentional omission of his being a "party" or a "witness" in response to the Court's question.

Likewise, the Plaintiffs make the same argument with respect to Juror Baker who filed for bankruptcy protection in a Chapter 7 case in 1995 in Florida,[9] Juror Cork who was arrested for gambling in Polk County, Florida, in March 2006, and charged with two crimes,[10] and Juror Pearson who was adjudicated guilty twice of driving while license

---

[4] See docket 133, Ex. A at p. 3.

[5] See docket 133, Ex. A at pp. 3-4.

[6] See docket 133, Ex. E.

[7] See docket 133, Ex. D .

[8] See docket 133, Ex. B.

[9] See docket 133, Ex. C.

[10] See docket 133, Ex. F.

suspended, and once of driving while under the influence, all in Duval County, Florida, and has been charged with over twelve crimes in total, most, if not all, appearing to involve driving offenses.[11] The Plaintiffs contend that because two jurors have been criminal defendants, two have been parties in their own bankruptcy cases, and one has been a party to a lawsuit not disclosed to the Court, the Plaintiffs were denied their right to a fair trial and an unbiased jury.

As noted by Defendant, there is no supporting affidavit or other evidence that establishes that the four individuals whose court proceedings have been submitted by the

---

[11]  See docket 133, Exs. G-J.  The Plaintiffs raised the issue with respect to Juror Pearson at side bar during the voir dire:
> [Court]: I never asked anybody whether they had any criminal problems, my question was in the context of—
> [Plaintiffs' Counsel]: Witness or party, if he was a Defendant, was a party to a case.
> [Court]: I understand that, but I think I've always understood that within the civil context.
> . . . .
> [Plaintiffs' Counsel]: I'm just trying to share with the Court for two reasons.  You asked a question, you said, let's be frank, I know it's not as well as you did, but in open Court not everybody tends to raise your hand.  Number two, I don't want to get to a verdict and then have somebody move to set aside the verdict on the ground that somebody was false with the Court.
> [Court]: Absent— I don't doubt what your check has shown.  Absent a proffer it's the same Thomas Pearson, I'm going to deny the motion.

See docket 133, Ex. A at pp. 16-17.  No proffer was made.  Plaintiffs' counsel did not make any objections with respect to striking a juror for cause, specifically stating that he had no objections for cause.  Id. at p. 17 ("As to cause, no, sir").

-4-

Plaintiffs are in fact the same individuals who are the jurors mentioned above.[12]  Even assuming that each of Plaintiffs' submissions correspond to each of the four jurors now challenged, the Court still finds that a new trial is not warranted because the alleged juror misconduct is insufficient to establish the necessary grounds for a new trial.

The standard for a new trial based on juror misconduct during *voir dire* requires that two elements are shown: (1) "a juror failed to answer honestly a material question on *voir dire*," and (2) "a correct response would have provided a valid basis for a challenge for cause."  United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001) (citing McDonough Power Equip. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)).  Juror misconduct in the context of *voir dire* hinges on the dishonesty of a response given to a question posed to a juror, not on a "mistaken, though honest, response to a question."  Id. at 966.  If the answer is dishonest, then a juror is presumed to be biased and the juror's participation in the verdict is deemed to be harmful error.  Id. at 967.  An answer mistaken, but nonetheless honest, does not warrant granting a new trial.  McDonough, 464 U.S. at 549-50.

Under the first prong of the juror misconduct standard, none of the four jurors at issue gave a dishonest answer to a material question during *voir dire*.  This case, unlike

---

[12] The Court also notes that the record does not reveal that any of the criminal offenses resulted in felony convictions.  See Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1288 (11th Cir. 2005) (holding that prior felony convictions are considered material to jury service and constitute a valid basis to challenge a juror for cause).

Carpa, is not a criminal case, and the court need not inquire as to the criminal background of each juror because it is not germane to the issues in a civil case. Apart from the general conduct of *voir dire* in any given civil suit, the Plaintiffs in this case did not specifically request that the court ask a question to elicit either criminal conduct or the filing of bankruptcy on the part of potential jurors. There is nothing to suggest that Juror Dennison purposefully withheld the fact that he had filed another lawsuit, particularly in view of the fact that he disclosed one lawsuit during *voir dire*. The burden rests on the Plaintiffs to produce evidence that proves the juror was not just wrong, but was intentionally withholding information that would necessarily result in a bias if that juror were left on the jury.

In a bankruptcy case, the debtor is not technically a party to a lawsuit, and such filing does not involve "you suing someone or someone suing you" as stated by the Court. At the very least, it is unclear that the question required disclosure of any bankruptcy filings.[13] As articulated by the Supreme Court in McDonough, "[J]urors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." Id., 464 U.S. at 555. The Court finds that the failure to disclose bankruptcy

---

[13] See Tidewater Finance Co., Inc. v. Fiserv Solutions, Inc., 192 F.R.D. 516, 521 (E.D. Va. 2000) (finding that a juror's failure to disclose a bankruptcy filing in response to a question asking whether a juror had "ever been involved in any type of litigation involving the nonpayment of a debt" was not necessarily dishonest). Although this case is not binding on this Court, it is illustrative of a situation in which a similar question did not elicit information about bankruptcy filings.

filings in response to the question asked does not equate with a dishonest answer on the part of those jurors.

Under the second prong of the test for a new trial, the Plaintiffs must show that if the "honest" answers had been given, a valid basis for a challenge for cause exists. Even assuming that the jurors should have disclosed the information submitted by the Plaintiffs, it is clear from the transcript that the Plaintiffs did not challenge any of the jurors for cause. The Court would not have been inclined to excuse any of the four contested jurors for cause because bankruptcy or past criminal charges do not in and of themselves constitute a valid basis for a cause challenge. This case involved a house fire allegedly started by a defective Christmas tree, and neither bankruptcy nor past criminal charges obviously affect the ability of a juror to decide this particular case. Therefore, the Court finds that a new trial is not warranted, nor is a juror interview.

## Improper Cross-Examination of Stephanie Cabrera

The Plaintiffs argue that the prejudicial effect of allowing Stephanie Cabrera to be cross-examined about the list of personal property she lost in the fire for the purpose of filing a claim against K-Mart in bankruptcy court, far outweighed its probative value. The Plaintiffs assert that Mrs. Cabrera recovered nothing from K-Mart, the seller of the tree, in its bankruptcy proceedings, and it would have been reasonable for the jury to assume that she did recover from K-Mart. Additionally, the fact that two of the jurors had previously filed bankruptcy could have made the jury prone to decide against Mrs. Cabrera for filing a claim in an ongoing bankruptcy proceeding.

The Court finds that the cross-examination regarding the list of personal items lost in the fire did not come close to reaching the level of substantial prejudice necessary to fulfill the heavy burden of showing grounds for a new trial. See Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004) (citing Rule 61 and other cases showing that error warranting new trial must affect "substantial rights" or result in "substantial injustice" or "substantial prejudice"). Even considering all of the other grounds raised in the motion for new trial, the Court does not find any profound cumulative effect which would warrant the grant of a new trial. The fact that Mrs. Cabrera made a list of personal items lost in the fire for the purposes of filing a claim in K-Mart's bankruptcy does not presume she recovered anything. Moreover, the fact that two jurors had filed bankruptcy is too tentative a connection between the jurors' filing bankruptcies and her filing a claim in a corporation's bankruptcy to determine which direction the jurors would be swayed, if at all.

## Improper Closing Argument

The Plaintiffs contend that Defendant's counsel's reference in closing argument to the absence of any other fires with the same tree was so improper as to mandate a new trial. Specifically, Defendant's counsel argued that "[t]here is no evidence that you have heard in this case whatsoever that there has ever been another fire with this tree."[14] The Court finds that this statement did not inject a new, wholly irrelevant issue into the case,

---

[14] See docket 133, Ex. O at p. 2.

and even if it had, the Plaintiffs failed to introduce or proffer any evidence showing that other fires involving the same tree had occurred. Before the trial, the Plaintiffs made a motion in limine to prohibit the Defendants from arguing that "they've never had another Christmas tree fire."[15] It was not made clear to the Court that the Plaintiffs had evidence to the contrary, and the Plaintiffs did not respond to the claim that they did not have any evidence to refute that no fires with the same type of tree had ever occurred. No further objection was made the Plaintiffs. Commenting on the lack of evidence introduced by the opponent is generally fair game in a civil trial. Had the Plaintiffs presented evidence of other fires to this Court in the context of prior similar incidents,[16] that evidence may well have been admitted, but this Court need not reach that decision with new evidence before it that could have been presented to the Court before trial.

### Failure to Give Special Jury Instruction

Jurisdiction in this Court was predicated on diversity of citizenship.[17] As a diversity case, the jury instructions must "accurately state the substantive law" of Florida as the forum state. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1312 (11th Cir. 2005)

---

[15] See docket 136, Ex. 2 at p. 5.

[16] See Hessen v. Jaguar Cars, Inc., 915 F.2d 641, 649-50 (11th Cir. 1990) (holding that evidence of other complaints by Jaguar owners may be offered to show defendant's notice of a particular defect or danger, the magnitude of the danger, and causation, among other factors).

[17] See docket 24, at para. 14. Federal question jurisdiction was also asserted based on an alleged violation of the Magnuson-Moss Warranty Act, 15 U.S.C § 2301 *et seq.*; however, that count was dismissed during the trial. See docket 24 at para. 52.

(citing <u>Wilson v. Bicycle South</u>, 915 F.2d 1503, 1510 (11th Cir. 1990)).  At the trial, the Plaintiffs, relying on the unpublished opinion of <u>Kaplan v. Daimlerchrysler</u>, A.G., No. 02-13223, 2003 WL 22023315 (11th Cir. Aug. 1, 2003), urged this Court to give a special instruction containing the <u>Cassisi</u> inference, a matter of substantive Florida law.[18] Although the Plaintiffs never submitted a written jury instruction addressing the <u>Cassisi</u> inference,[19] counsel for Plaintiffs seemed to suggest that the Court should give the instruction given in the <u>Kaplan</u> case, with some minor changes to include references to the fiber-optic tree at issue here.  In <u>Kaplan</u>, visiting Judge Kevin T. Duffy who tried the case, read the following instruction to the jury:

> [I]f you find that the driver's side airbag in Mr. Kaplan's vehicle was intended by the manufacturer to deploy in an accident such as this, you may infer that it was defective from its failure to deploy, unless, taking into consideration all of the evidence in the case, you conclude that the airbag's failure to deploy was not due to any defect.

<u>Kaplan</u>, 2003 WL 22023315, at *3.

To the extent Plaintiffs contend they made a sufficient request for the special instruction, the Court declined to add any special <u>Cassisi</u> instruction stating:

> [This is] a products liability case, pure and simple.  I'm a little concerned, first of all, this <u>Kaplan</u> case is an unpublished opinion, it's not binding on me, it's persuasive only.  I know,

---

[18]  This inference is explained in footnote 2 above.

[19]  The jury instructions submitted before the trial did not contain any such special instruction, nor did the Plaintiffs submit a written special instruction during trial.  <u>See</u> docket 119 for jury instructions submitted by Plaintiffs.

-10-

> I guess it was put in WestLaw because of the <u>Cassisi</u> situation, so I wouldn't be able to cite it as if it had binding precedence, but it's not. I don't know how I would word such an instruction. It seems to me the way I would word it as the Plaintiff wants to word it would run afoul of the— would be analogous to the <u>Gencorp</u> situation and would [be] tantamount to directing a verdict of liability for Plaintiff.

(Portion of trial transcript not transcribed by the parties). The following instruction was submitted by the Defendants[20] and read verbatim at the trial:

> In cases involving allegedly defective, unreasonably dangerous products, the Defendant may be liable even though you may find that the Defendant was not negligent and exercised all reasonable care in the design, manufacture and sale of the product in question.
>
> On the other hand, any failure of a manufacturer of a product to adopt the most modern, or even a better safeguard, does not make the manufacturer legally liable to a person injured by that product. The manufacturer does not guarantee that no one will get hurt in using its product, and a product is not defective or unreasonably dangerous merely because it is possible to be injured while using it. There is no duty upon the manufacturer to produce a product that is "accident-proof." What the manufacturer is required to do is to make a product that is free from defective and unreasonably dangerous conditions.
>
> A product is in a defective condition, unreasonably dangerous to the user, when it has a propensity or tendency for causing physical harm beyond that which would be contemplated by the ordinary user, having ordinary knowledge of the product's characteristics commonly known to the foreseeable class of persons who would normally use the product.

---

[20] <u>See</u> docket 115 for proposed jury instructions of Defendant.

> With regard to the issue of "legal cause," a defective
> condition is a legal cause of injury if it directly and in natural
> and continuous sequence produces or contributes substantially
> to producing such injury, so that it can reasonably be said
> that, except for the defective condition, the injury complained
> of would not have occurred.[21]

Assuming for purposes of this issue that Plaintiffs did sufficiently preserve the objection to failing to give a Cassisi instruction,[22] there is no requirement under Florida substantive law that a Cassisi instruction be given under any particular situation.[23] Neither is this Court bound by the unpublished Kaplan decision.[24]  In this case, a special instruction stating that an inference can be made that the tree was defective because the house caught on fire, unless based on all the evidence the jury found the fire was not caused by the tree, would be tantamount to directing a verdict for the Plaintiffs, which this Court must not do.

### Undisclosed Expert Opinion

Lastly, the Plaintiffs take issue with the trial testimony of the sole defense expert witness, LaDon Richardson.  The Court, over objection, permitted Mr. Richardson to use

---

[21]   See docket 125 at pp. 9-11 and docket 115 at p. 5.

[22]   The Plaintiffs never crafted a specific jury instruction for the Court to consider other than referring to the instruction given in the Kaplan case.

[23]   See Standard Jury Instructions— Civil Cases (No. 02-2), 872 So.2d 893, 894 (Fla. 2004) (adding Comment 7 which states that "the Committee takes no position on the sufficiency of these instructions in cases in which the Cassisi inference applies").

[24]   See Bonilla v.  Baker Concrete Constr., 487 F.3d 1340, 1345 n. 7 (11th Cir. 2007) (holding that "unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants").

an exemplar piece of charred branch from a similar tree in his testimony to the jury.  The Plaintiffs assert that Mr. Richardson testified that the branch had been tested, at some point by someone other than himself, for its ability to resist burning and that it was essentially flame-retardant and incapable of continuing to burn for any significant length of time.  The Plaintiffs characterize the testimony as an undisclosed expert opinion which should have been rejected as an improper opinion regarding how the tree could not have burned rather than his expert opinion previously directed to the electrical aspect of the fire.  The Plaintiffs claim both surprise and prejudice.

First, Mr. Richardson is a certified fire investigator and owns a company specializing in consulting on the cause and origin of fires.[25]  He testified that he received an exemplar tree from Defendant and had it tested.[26]  The laboratory that conducted the test determined that the tree's needles were made of PVC and Mr. Richardson concluded that the 3 amp system was not a sufficient source of ignition for PVC.[27]  Mr. Richardson testified, "There's not enough energy to ignite and sustain ignition of the PVC. . . . [the] solid char formation is, it blocks the radiation of the fire back to the virgin fuel and stops the vaporization of the solid fuel from feeding the fire so it tends to self-extinguish."[28]  He

---

[25] See docket 136, Ex. 6 at pp. 2-4.

[26] See docket 136, Ex. 6 at pp. 10-11.

[27] See docket 136, Ex. 6 at pp. 32-33.

[28] See docket 136, Ex. 6 at p. 33.

opined that the chances were "near zero" that a spark would ignite the PVC needles.[29] Thereafter, he showed the piece of charred branch to the jury at which time the Plaintiff interposed an objection.[30]

The Court remains convinced that the charred exemplar was used as demonstrative evidence to demonstrate the burning qualities of the PVC. Moreover, the fact that Mr. Richardson used an exemplar tree in formulating his opinion had been disclosed at least by the time of his deposition. Based on this scenario, the Court finds no surprise and no prejudice. Having reviewed the motion and the record, the Court concludes that no single ground, nor all grounds viewed in their totality, provides a persuasive basis for granting a new trial.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)   Plaintiffs' Motion to Interview Jurors (Dkt. 133) is **DENIED**.

(2)   Plaintiffs' Motion for New Trial (Dkt. 133) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on November 7, 2007.

　　　　　　　　　　　　　　　　　s/*Richard A. Lazzara*
　　　　　　　　　　　　　　　　**RICHARD A. LAZZARA**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[29]  See docket 136, Ex. 6 at p. 33.

[30]  See docket 136, Ex. 6 at p. 34.